IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF NEW JERSEY

**CARMEN J. FLORES, AS ADMINISTRATOR**
**OF ESTATE OF DWAYNE JOEL**
**FLORES, DECEASED, AND CARMEN**
**FLORES IN HER OWN RIGHT**
3243 N. 47th Street
Pennsauken, NJ 08109

NO.

PLAINTIFF

vs.

JURY TRIAL DEMANDED

**CAMDEN COUNTY DEPARTMENT OF**
**CORRECTIONS**
330 Federal Street
Camden NJ 08101
    and

**DAVID S. OWENS, JR., DIRECTOR**
Camden County Department of Corrections
330 Federal Street
Camden, NJ 08101
    And

**KAREN TAYLOR, WARDEN**
Camden County Department of Corrections
330 Federal Street
Camden, NJ 80101
    And

**CAMDEN COUNTY DEPARTMENT OF**
**CORRECTIONS JUVENILE DETENTION**
**CENTER**
8 South Woodbury-Turnersville Road
Blackwood, NJ 08012
    and

**JOHANN ARNOLD, CHIEF**
c/o Camden County Department of Corrections
Juvenile Detention Center
8 South Woodbury-Turnersville Road
Blackwood, NJ 08012

    and

**EDWARD FANELLE, ADMINISTRATOR**
c/o Camden County Department of Corrections
Juvenile Detention Center
8 South Woodbury-Turnersville Road
Blackwood, NJ 08012

      and

**LORETTA ADAMS, CAPTAIN**
c/o Camden County Department of Corrections
Juvenile Detention Center
8 South Woodbury-Turnersville Road
Blackwood, NJ 08012

      and

**CHRIS FOSCHINI, DEPUTY WARDEN**
c/o Camden County Department of Corrections
Juvenile Detention Center
8 South Woodbury-Turnersville Road
Blackwood, NJ 08012

      and

**SERGEANT WESCOTT (FIRST NAME
UNKNOWN)**
c/o Camden County Department of Corrections
Juvenile Detention Center
8 South Woodbury-Turnersville Road
Blackwood, NJ 08012

      and

**JOHN JONES, LIEUTENANT**
Camden County Department of Corrections
Juvenile Detention Center
8 South Woodbury-Turnersville Road
Blackwood, NJ 08012
      and

**TIFFANY DeANGELIS, SERGEANT**
c/o Camden County Department of Corrections
Juvenile Detention Center
8 South Woodbury-Turnersville Road
Blackwood, NJ 08012

-2-

**JOHN KAMULDA, SERGEANT**
c/o Camden County Department of Corrections
Juvenile Detention Center
8 South Woodbury-Turnersville Road
Blackwood, NJ 08012

     and

**HELEN STILLMAN, CORRECTIONS OFFICER**
c/o Camden County Department of Corrections
Juvenile Detention Center
8 South Woodbury-Turnersville Road
Blackwood, NJ 08012

     and

**DAMIEN VELEZ, CORECTIONS OFFICER**
c/o Camden County Department of Corrections
Juvenile Detention Center
8 South Woodbury-Turnersville Road
Blackwood, NJ 08012

     and

**JOSEPH CARNEY, CORECTIONS OFFICER**
c/o Camden County Department of Corrections
Juvenile Detention Center
8 South Woodbury-Turnersville Road
Blackwood, NJ 08012

     and

**CORRECTIONS OFFICER BAILEY (FIRST NAME UNKNOWN)**
c/o Camden County Department of Corrections
Juvenile Detention Center
8 South Woodbury-Turnersville Road
Blackwood, NJ 08012

     and

**CFG HEALTH SYSTEMS, LLC**
765 East Route 70
Building A-101
Marlton, NJ 08053

-3-

and

**NURSE LISA McCREA**
c/o CFG Health Systems, LLC
765 East Route 70
Building A-101
Marlton, NJ 08053

and

**CORRECTIONS OFFICERS**
**JOHN/JANE DOES (1-10)**

and

**MEDICAL PROVIDERS**
**JOHN/JANE DOES (1-10)**

DEFENDANTS

## COMPLAINT

## THE PARTIES

1.  Plaintiff Carmen Flores, is an adult individual residing at 3243 N. 47th Street,

Pennsauken, NJ, 08109.

2.  On June 18, 2019, Plaintiff was granted Letters of Administration Ad

Prosequendum by the Camden County Surrogate to act as the Administratrix of the Estate of

Dwayne Flores, her deceased son, Dwayne Joel Flores, Deceased ("Dwayne Flores").

3.  Dwayne Flores, a minor, was born on September 9, 2003, and died, at the age of

15, as a result of the "Amphetamine and Heroin Intoxication" according to the **Amended**

Death Certificate prepared by the Medical Examiner's Office during the overnight hours of April

13, 2019.  At all times relevant to this action, Dwayne Flores was a pre-trial detainee (hereafter

"Resident") at the Camden County Juvenile Detention Center in Camden County operated by the

-4-

Camden County Department of Corrections.  At age 15, he was survived by his mother, Plaintiff Carmen Flores, and several adult siblings.

4.   Defendant Camden County Department of Corrections, located at 330 Federal Street, Camden, NJ 08103, is a government entity owned, operated, and controlled by the County of Camden, New Jersey. At all times relevant to this action, Defendant Camden County Department of Corrections operated, staffed, and controlled the Camden County Juvenile Detention Center.

5.   Defendant David S. Owens, Jr. ("Director Owens"), was, at all relevant times, the Director of the Camden County Department of Corrections acting under color of state law and within the course and scope of his employment with the County of Camden, with a principal place of business located at 330 Federal Street, Camden, NJ 08103.

6.   Defendant Karen Taylor ("Warden Taylor') was, at all relevant times, the Warden of the Camden County Department of Corrections acting under color of state law and within the course and scope of her employment with the County of Camden, with a principal place of business located at 330 Federal Street, Camden, NJ 08103.

7.   Defendant Camden County Juvenile Detention Center, located at 8 South Woodbury-Turnersville Road, Blackwood, NJ, 08012, is a government entity owned, operated, and controlled by the County of Camden, New Jersey. At all times relevant to this action, Defendant Camden County Juvenile Detention Center operated, staffed, and controlled a juvenile detention facility where Plaintiff Dwayne Flores was a resident when he died.

8.   Defendant Johann Arnold ("Chief Arnold") was, at all relevant times, the Chief of the Camden County Juvenile Detention Center acting under color of state law and within the

course and scope of his employment with the County of Camden, with a principal place of business located at 8 South Woodbury-Turnersville Road, Blackwood, NJ, 08012.

9.  Defendant Edward Fanelle ("Administrator Fanelle") was, at all relevant times, the Administrator of the Camden County Juvenile Detention Center acting under color of state law and within the course and scope of his employment with the County of Camden, with a principal place of business located at 8 South Woodbury-Turnersville Road, Blackwood, NJ 08012.

10.  Defendant Loretta Adams ("Captain Adams") was, at all relevant times, the Captain of the Camden County Juvenile Detention Center acting under color of state law and within the course and scope of her employment with the County of Camden, with a principal place of business located at 8 South Woodbury-Turnersville Road, Blackwood, NJ 08012.

11.  Defendant Chris Foschini ("Deputy Warden Foschini") was, at all relevant times, the Deputy Warden of the Camden County Juvenile Detention Center acting under color of state law and within the course and scope of his employment with the County of Camden, with a principal place of business located at 8 South Woodbury-Turnersville Road, Blackwood, NJ 08012.

12.  Defendant Sergeant Wescott ("Sergeant Wescott" first name unknown) was, at all relevant times, a sergeant at the Camden County Juvenile Detention Center acting under color of state law and within the course and scope of his employment with the County of Camden, with a principal place of business located at 8 South Woodbury-Turnersville Road, Blackwood, NJ 08012.

13. Defendant John Jones ("Lt. Jones") was, at all relevant times, a Lieutenant at the

Camden County Juvenile Detention Center acting under color of state law and within the course and scope of his employment with the County of Camden, with a principal place of business located at 8 South Woodbury-Turnersville Road, Blackwood, NJ 08012.

14. Defendant Tiffany DeAngelis ("Sergeant DeAngelis") was, at all relevant times, a sergeant at the Camden County Juvenile Detention Center acting under color of state law and within the course and scope of her employment with the County of Camden, with a principal place of business located at 8 South Woodbury-Turnersville Road, Blackwood, NJ 08012.

15. Defendant John F. Kamulda ("Sergeant Kamulda") was, at all relevant times, a sergeant at the Camden County Juvenile Detention Center acting under color of state law and within the course and scope of his employment with the County of Camden, with a principal place of business located at 8 South Woodbury-Turnersville Road, Blackwood, NJ 08012.

16. Defendant Helen Stillman ("Correctional Officer Stillman") was, at all relevant times, a correctional officer at the Camden County Juvenile Detention Center acting under color of state law within the course and scope of her employment with the County of Camden with a principal place of business located at 8 South Woodbury-Turnersville Road Blackwood, NJ 08012.

17. Defendant Damien Velez ("Correctional Officer Velez") was, at all relevant times, a correctional officer at the Camden County Juvenile Detention Center acting under color of state law within the course and scope of his employment with the County of Camden with a principal place of business located at 8 South Woodbury-Turnersville Road Blackwood, NJ 08012.

18. Defendant Joseph Carney ("Correctional Officer Carney") was, at all relevant times, a correctional officer at the Camden County Juvenile Detention Center acting under color

of state law within the course and scope of his employment with the County of Camden with a principal place of business located at 8 South Woodbury-Turnersville Road Blackwood, NJ 08012.

19. Defendant Correctional Officer Bailey ("Correctional Officer Bailey" first name unknown) was, at all relevant times, a corrections officer at the Camden County Juvenile Detention Center acting under color of state law within the course and scope of his employment with the County of Camden with a principal place of business located at 8 Woodbury-Turnersville Road, Blackwood, NJ 08012.

20. Defendant CFG Health Systems, LLC, is a New Jersey limited liability corporation actively doing business in the State of New Jersey with a principal place of business located at 765 East Route 70, Building A-101, Marlton, NJ 08053. At all relevant times, CFG Health Systems, LLC was under contract with the Camden County Department of Corrections and the Camden County Juvenile Detention Center to provide health care services, including psychiatric and mental health services to residents of the Camden County Juvenile Detention Center, including the minor decedent Dwayne Flores.

21. Defendant Nurse Lisa McCrea ("Nurse McCrea") was, at all relevant times, a licensed practical nurse working at the Camden County Juvenile Detention Center, acting under color of state law and within the course and scope of her employment and or agency with CFG Health Systems, LLC.

22. Defendant Correctional Officers John/Jane Does (1-10) were at all relevant times correctional officers or supervisors employed by the Camden County Department of Corrections and/or the Camden County Juvenile Detention Center. Plaintiff does not presently know the names of these defendants after conducting a reasonable search, including a review of the limited

-8-

information provided by the Camden County Office of the Prosecutor relative to written requests made to same. In particular, documents requested included the Individual Case Record of Dwayne Flores, a minor, maintained pursuant to N.J.A.C. 13:92-6.2, Medication Log maintained pursuant to N.J.A.C. 13:92-6.4, Individual Medication Administration Record maintained pursuant to N.J.A.C. 13:92-6.4. None of the aforementioned documents was provided. Hence, Plaintiff does not know the names of other correctional officers and/or supervisors responsible for the care, custody, control, and administering to the needs of Dwayne Flores, including continuous observing Flores at all relevant times and recording those observations in writing every five minutes as further set forth below *infra*. Furthermore, the initials and/or signatures on certain other monitoring forms/logs or records that have been supplied are illegible. Plaintiff expects to learn the names of these additional officers and/or supervisors through formal discovery and will promptly take steps to substitute actual names for these fictitious names.

23. Defendant Medical Providers John/Jane Does (1-10) were at all relevant times medical providers and/or supervisors employed by Defendant CFG Health Systems, LLC. Plaintiff does not presently know the names of these defendants after conducting a reasonable search, including a review of the limited information provided by the Camden County Office of the Prosecutor relative to written requests made to same. In particular, the documents requested included the Individual Case Record of Dwayne Flores, a minor, maintained pursuant to N.J.A.C. 13:92-6.2; Medication Log maintained pursuant to N.J.A.C. 13:92-6.4; and Individual Medication Administration Record maintained pursuant to N.J.A.C. 13:92-6.4. None of the aforementioned documents was provided. Hence, Plaintiff does not know the names of other medical providers and/or supervisors responsible for the care, custody, control, and administering to the medical and psychiatric needs of Dwayne Flores, including the factual basis

-9-

for placing the minor decedent Dwayne Flores on "suicide watch" as set forth below *infra,* which triggered a mandated continuous observation of Flores every five minutes and recording those observations in writing. Furthermore, the initials and/or signatures on certain other monitoring forms/logs or records that have been supplied are illegible, and do not include any of the logs after April 10, 2019. In addition, the documents provided simply describe the only medical providers referenced as "a nurse" who saw Dwayne Flores in his cell the night before he died and one who was called the next morning after he was discovered dead. Plaintiff expects to learn the names of these additional medical providers and/or supervisors through formal discovery and will promptly take steps to substitute actual names for these fictitious names.

24. At all relevant times, CFG Health Systems, LLC was acting, or alternatively, failed to act, by and through its employees, agents, and/or ostensible agents, who were acting within the course and scope of their employment, agency, and/or ostensible agency.

## JURISDICTION AND VENUE

25. This Court has jurisdiction of this action over all defendants pursuant 42 U.S.C. § 1983 as well as 28 U.S.C. § 1331. This Court has jurisdiction over pendant state tort law claims pursuant to 28 U.S.C. § 1367(a).

26. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims took place here, as did Dwayne Flores's death.

## FACTUAL BACKGROUND

27. From the moment Dwayne Flores became a resident/pre-trial detainee on February 3, 2019, his mental health issues and troubled history were well known to the Camden

-10-

County Department of Corrections and the Camden County Juvenile Detention Center and the other defendants.

28. In fact, Dwayne Flores first became known to the Camden County Juvenile justice system in July 2013, at the age of 13. From January through April, 2018, when he was a resident of Hope Ranch Inc, a residential treatment facility which provides services for the Camden County Department of Corrections.

29. On April 11, 2018, while a resident at Ranch Hope, Dwayne Flores was diagnosed with (a) Adjustment Disorder with disturbance of conduct; (b) Conduct disorder, adolescent onset type; (c) Major Depressive disorder, recurrent, moderate for which he was prescribed the antidepressant sertraline (Zoloft);(d) Attention Deficit hyperactivity disorder, combined type, (ADHD), for which he was prescribed Vyvanse, an amphetamine and the medication clonidine; (e) Disappearance and death of family member; (f) Impulsiveness; (g) Alcoholism and drug addiction in family;(h) Problems related to social environment; (i)Parent-child conflict; (j) Irritability and anger; and (k) Cannabis use, unspecified with unspecified cannabis use disorder. The ADHD diagnosis was longstanding and pre-dated Dwayne's period of residency at Hope Ranch, as was, upon information and belief, the diagnosis of Major Depressive Disorder.

30. According to Camden County Juvenile Detention Center's Mission Statement, residents are seen by the nurse within 24 hours of admission and given a physical examination by a pediatrician within 72 hours of admission. As noted in paragraphs 22 and 23, *supra*, Plaintiff requested but did not receive all medical records maintained by the Camden County Juvenile Detention Center. Plaintiff expects to receive records of the nurse's and

-11-

pediatrician's evaluation through formal discovery, which presumably will address the need for psychological follow up and the administration of Dwayne Flores's medications. The medical evaluations described in the Mission Statement, if conducted, should and would have apprised the Defendants of Dwayne Flores's medical and psychological diagnoses, conditions, and of his ongoing therapeutic needs.

31. On April 12, 2019, Dwayne Flores was transferred to the Juvenile Detention Center's Behavioral Management Unit for "threatening Juvenile Detention Officers, fighting with other residents, and misbehaving in school" according to an Investigative Report Prepared by the Camden County Prosecutor's Office.

32. According to the Investigative Report, during an admissions interview, the Camden County Juvenile Detention Center concluded that Flores should be placed on suicide watch because of his mental health status.

33. The placement of Dwayne Flores on suicide watch mandated that the Juvenile Detention Officers assigned to the Behavioral Management Unit conduct a visual check in his cell every five minutes.  The results of the visual check were to be entered into a log by the on-duty Juvenile Detention Officer. Upon information and belief, no such log entries exist.

34.  Another document prepared by investigators from the Camden County Prosecutor's Office titled "Summary Investigative Report" notes that a review of surveillance footage from inside the Behavioral Management Unit spanning nearly 2 hours from 6:00 p.m. to 7:58 p.m. reveals that only once—at approximately 7:36 p.m.-- did the on-duty Corrections Officer, Helen Stillman check in on Dwayne Flores's cell as is required for a suicide watch.

35. Before being transferred to the Behavior Management Unit, the Correctional Officers noted that Dwayne Flores was hostile, angry, and agitated, and that he continued to be so once he was transferred to the Unit, his state of mind described as "extremely agitated". He also acted out by, for example, blocking the window to his cell room with a mattress and threatening staff.

36. Dwayne Flores was not known to be a drug user other than cannabis. He was not known to use cocaine, heroin, morphine, opioids, or other commonly abused drugs or narcotics. None of his arrests involved drug charges of any kind. Moreover, Dwayne Flores was never known to be in possession of any form of controlled or dangerous substance during his periods of incarceration or detention at Hope Ranch in 2018 or the Camden County Juvenile Detention Center during his 2019 residency relevant to this action.

37. According to the Investigative Report prepared by the Camden County Prosecutor's Office, on April 13, 2019, at approximately 6:30 Dwayne Flores was seen by a female nurse because he had complained about itching. The Investigative Report states that the nurse administered Benadryl. There is no other information about the extent of the nurse's medical examination of Dwayne Flores.

38. According to the Investigative Report prepared by the Camden County Prosecutor's Office, at 7:58 Dwayne Flores appears at the door of the window of his cell, and at 7:58 he is let out of the cell by Correction Officer Stillman to take a shower. At 8:19PM, Flores was let back into his cell after showering. This was the last time that Dwayne Flores was seen alive.

39. An autopsy conducted on April 15, 2019, listed the cause of death as "Amphetamine and Heroin Intoxication". The manner of death was listed was an accident. The autopsy

-13-

indicates that the death certificate was amended on May 6, 2019. It is unknown from the available information whether the May 6, 2019 amendment addressed the cause of death or the manner of death. Upon information and belief, the amendment addressed the manner of death which was initially believed to be suicide.

40. A toxicology report dated May 4, 2019 reveals the compounds found in blood samples drawn by the Medical Examiner's Office was positive for amphetamine, codeine, morphine, and 6-monoacetylmorphine.

41. On April 13, 2019, Detective Alexander Burkhardt of the Camden County Prosecutor's Office and Sergeant Tiffany DeAngelis of the Camden County Juvenile Detention Center drove to Plaintiff Carmen Flores' home where they met with Carmen Flores and her daughter Judy Vazquez-Corona and informed them of the death of Dwyane Flores. During this meeting, Carmen Flores was informed that Dwayne Flores committed suicide.

## COUNT I – VIOLATION OF CIVIL RIGHTS
## (FOURTEENTH AMENDMENT)
## PLAINTIFF v. DEFENDANTS

41. Plaintiff incorporates all preceding paragraphs as if set forth fully at length below.

42. At all relevant times, Defendants, acting under color of law, deprived Plaintiff of Due Process pursuant to the Fourteenth amendment.

43. In particular, Defendants deprived Plaintiff of Due Process rights with respect to his known mental status and his vulnerability to suicide, which vulnerability was acknowledged by the Defendants in that they placed him on suicide watch before April 13 and more specially into the overnight hours of April 13 to April 14, 2019.

44. For at least 60 days, and even longer, Defendants possessed actual knowledge of Dwyane Flores' serious mental illness, diagnosis of Major Depressive illness, Attention Deficit

Hyperactivity Disorder (ADHD), Impulsiveness, Conduct Disorder, Disparate and Death of

Family Member, Alcoholism and Drug Addiction in his family, Problem related to social

environment and Parent-child conflict.  All of the above amounted to telltale suicide risks in the

context of incarceration of a 15 year old.

45. Despite such knowledge, Defendants ignored, if not exacerbated Dwayne Flores'

mental health problems and failed to follow their own mandates regarding suicide watch which

would have saved his life, such as checking in on him every 5 minutes as required.  Moreover

by placing Dwayne Flores in the Behavioral Management Unit, in which residents were isolated

in a single cell, further exacerbated the isolation and loneliness leading to suicide.

46.  As a direct and proximate result of Defendants unlawful and unconstitutional

behavior, Dwayne Flores suffered serious bodily harm and death, and Dwyane Flores and

his mother suffered other catastrophic damages as set forth below.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants, jointly

and severally, for wrongful death and survival damages, compensatory and punitive damages,

plus interest, costs, attorney's fees and such other relief as the Court deems just and proper.

### COUNT II – VIOLATION OF CIVIL RIGHTS
### (EIGHTH AMENDMENT)
### PLAINTIFF v. DEFENDANTS

47. Plaintiff incorporates all preceding paragraphs as if set forth fully at length below.

48.  At all relevant times, Defendants, acting under color of law, deprived Plaintiff of

Due Process pursuant to the Fourteenth amendment.

49. In particular, Defendants' violated the Eighth Amendment rights of Plaintiff

Dwayne Flores to be free from cruel and unusual punishment.

-15-

50.  For at least 60 days, and even longer, Defendants possessed actual knowledge of Dwyane Flores' serious mental illness, diagnosis of Major Depressive illness, Attention Deficit Hyperactivity Disorder (ADHD), Impulsiveness, Conduct Disorder, Disparate and Death of Family Member, Alcoholism and Drug Addiction in his family, Problem related to social environment and Parent-child conflict.  All of the above amounted to telltale suicide risks in the context of incarceration of a 15 year old.

51. Despite such knowledge, Defendants ignored, if not exacerbated Dwayne Flores' mental health problems and failed to follow their own mandates regarding suicide watch which would have saved his life, such as checking in on him every 5 minutes as required.  Moreover by placing Dwayne Flores in the Behavioral Management Unit, in which residents were isolated in a single cell, further exacerbated the isolation and loneliness leading to suicide.

52. The aforementioned actions by the Defendants also violated the Eighth Amendment rights of Dwyane Flores to be free from cruel and unusual punishment.

53. As a direct and proximate result of Defendants unlawful and unconstitutional behavior, Dwayne Flores suffered serious bodily harm and death, and Dwyane Flores and his mother suffered other catastrophic damages as set forth below.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants, jointly and severally, for wrongful death and survival damages, compensatory and punitive damages, plus interest, costs, attorney's fees and such other relief as the Court deems just and proper.

## COUNT III – VIOLATION OF NEW JERSY TORT CLAIMS ACT
### (STATE LAW)
### PLAINTIFF v. ALL CAMDEN COUNTY DEFENDANTS, INCLUDING WARDEN, ADMINISTRATOR, LIEUTENANTS, SERGEANTS, AND CORRECTIONAL OFFICERS

54. Plaintiff incorporates all preceding paragraphs as if set forth fully at length below.

55. Plaintiff has satisfied all pre-action notice requirements pursuant to the New Jersey Tort Claims Act, N.J.S.A. 59:8-4.

56. On July 11, 2019, Plaintiff served Notice of her claim for damages in the form prescribed by N.J.S.A. 59:8-4 and signed by Plaintiff's representative, by mailing the same certified mail, return receipt requested to the County of Camden. Attached as Exhibit "A" collectively are true and correct copies of Plaintiff's Notice of Claim dated July 11, 2019 together with the signed certified return receipt card proving notice upon the County of Camden.

57. More than six (6) months have passed since service of Plaintiff's Notice of Claim and Plaintiff's claim remains unsatisfied.

58. At all times relevant hereto, and especially for a long period of time prior to April through 14, 2019, there existed within the Camden County Juvenile Detention Center a known problem of residents taking unprescribed, illegal controlled and/or hazardous substances which were smuggled and/or brought surreptitiously into the juvenile detention center exposing the minor juvenile population to the risks of drug abuse and death by overdose.

59. At all times relevant hereto, it was the duty of Defendants to keep and maintain a safe and secure environment where Plaintiff Dwayne Flores could be kept free from injury, harm, and death by preventing access to controlled substances by residents within its facility, including performing searches and inspections which would have prevented the illegal access

to smuggled and/or surreptitiously acquired drugs.

60. On or about April 13 into the overnight hours and morning of April 14, 2019, Plaintiff Dwyane Flores ingested controlled substances and/or drugs which were not prescribed to him and could only have found their way into Defendants' facility by illegal smuggling and/or surreptitious entry. The ingestion of said drugs, which are documented in a toxicology report ordered by the Medical Examiner's Office resulted in suffering, bodily injury and ultimate death to Dwayne Flores.

61. The negligence and carelessness of Defendants Camden County Dept of Corrections and Camden County Juvenile Detention Center included, but is not limited to the following:

a) failing to prevent the access by residents to illegal and harmful controlled substances which are not prescribed to said residents;

b) permitting the presence of illegal controlled substances into the Defendants' facility where it would be used, ingested, abused, and otherwise taken by the juvenile residents;

c) failing to exercise due regard to the safety of the juvenile residents within its facility;

d) failing to exercise that degree of care required by law for the safety of Plaintiff under the circumstances;

e) failing to inspect the entire behavior management unit including the cell of Dwayne Flores beginning on April 12, 2019 up through and including the morning of April 14, 2019, when he was found dead; and

g) having actual notice of the existence of the forementioned smuggling or otherwise surreptitious presence of illegal controlled substances, the Defendants failed to correct and

-18-

prevent said smuggling, knowing or having reason to believe that the juvenile residents including Plaintiff would be injured thereby.

62. Plaintiff further avers that the Defendants had, or in the exercise of reasonable care, should have been on notice of the existence of the smuggling or seditious penetration of controlled substances into its facility prior to April 13, 2019.

63. As a direct and proximate result of the negligence of Defendants Camden County Dept of Corrections and Camden County Juvenile Detention Center, Plaintiff Dwyane Flores sustained serious bodily injuries, including death.

## COUNT IV-MEDICAL NEGLIGENCE (STATE LAW)
## PLAINTIFF v. MEDICAL DEFENDANTS

64. Plaintiff incorporates all preceding paragraphs as if set forth fully at length below.

65. At all relevant times, the Medical Defendants, including Defendant Nurse Lisa McCrea were, upon information and belief, licensed to practice nursing and/or medicine in the State of New Jersey, and had a duty to comply with generally accepted medical and mental health standards of care in the medical treatment of Dwayne Flores.

66. The Medical Defendants, including Defendant Nurse Lisa McCrea violated their duty of care to Dwayne Flores and were careless and negligent in the following respects:

a) failure to timely and accurately recognize, diagnose, and treat Dwayne Flores' medical condition, including serious mental illness;

b) failure to timely and accurately diagnose Dwayne Flores' behavior as suicidal and not just combative and directed against others beside himself;

c) failure to perform a structed suicide risk assessment and reassessment on a timely and accurate basis;

d)  failure to implement and maintain an intense and appropriate treatment plan to minimize the risk of suicide;

e)  failure to render proper and timely treatment and care to Dwayne Flores, including on an emergency/stat basis as required under the circumstances;

f)  failure to obtain timely and appropriate consultation from specialists, including psychiatrists and psychologists;

g)  failure to timely and appropriately prescribe and administer necessary medications;

h)  failure to provide necessary medical information to Dwayne Flores about the care he required and provided incomplete and incorrect information to him regarding his care;

i)  failure to provide necessary, complete, and correct medical information to other medical professionals caring for Dwayne Flores about the care he required and/or was provided;

j)  failure to timely appreciate the grave danger he was in and to take seriously his behavior and threats of violence;

k)  failure to timely appreciate Dwayne Flores' changes in mental status, eating and sleeping patterns, and stressors he was under;

l)  failure to house Dwayne Flores in the appropriate housing unit and for the appropriate amount of time;

m)  failure to ensure that Dwayne Flores was observed continuously and within the 5 minute intervals established by the Camden County Dept of Corrections and Juvenile Detention Center per its watch policies and procedures;

n)  failure to prevent Dwayne Flores from obtaining controlled substances surreptitiously and ingesting them with the purposes of causing himself harm, including death;

o) failure to ensure that others, including supervisors, were timely and appropriately notified when Dwayne Flores violated safety orders, blocked visual access to his prison cell, and had access to the means of suicide, including surreptitiously obtaining dangerous controlled substances;

p) failure to timely and accurately complete necessary paperwork, including but not limited to Nursing Progress Notes and Psychiatric Observation and/or Psychologic Observation forms;

q) failure to follow appropriate suicide related training and policies; and

r) entrusting Dwayne Flores' care to individual(s) who it should have known would perform his/her/their duties in a negligent manner.

67. The Medical Defendants', including Defendant Nurse Lisa McCrea's violation of their duty of care for Dwyane Flores' safety and well-being, increased the risk of harm to Dwayne Flores and was a direct and proximate cause and substantial factor in bringing about Dwayne Flores' serious bodily injuries and death.

68. To the extent that the individual Medical Defendants, including Defendant Nurse Lisa McCrea were acting as employees, agents and/or ostensible agents of CFG Health Systems, acting within the scope and course of their employment, agency, and/or ostensible agency, that private mental health and health care contractor is vicariously liable to Plaintiff.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants, jointly and severally, for wrongful death and survival damages, compensatory and punitive damages, plus interest, costs, attorney's fees and such other relief as the Court deems just and proper.

## FIRST CAUSE OF ACTION-WRONGFUL DEATH
## PLAINTIFF v. DEFENDANTS

69.   Plaintiff incorporates all preceding paragraphs as if fully set forth at length below.

70.   Plaintiff is the legal representative of the Estate of Dwayne Joel Flores.

71.   Plaintiff brings this action by virtue of N.J.S.A. 2A:31-1 and claims all benefits from

the Wrongful Death Act on behalf of herself and all other persons entitled to recover under the

law.

72.   By reason of Dwayne Flores' tragic death, his Administratrix has suffered pecuniary

losses and seeks recovery of all medical, funeral, and administration expenses incurred as well

as loss of support, comfort, society, companionship, guidance, solace, protection and other

services Dwayne Flores would have provided during his life.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants, jointly

and severally, for wrongful death and survival damages, compensatory and punitive damages,

plus interest, costs, attorney's fees and such other relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION-SURVIVAL ACTION
## PLAINTIFF v. DEFENDANTS

73. Plaintiff incorporates all preceding paragraphs as if fully set forth at length below.

74. Plaintiff brings this action on behalf of the Estate of Dwayne Joel Flores and claims

all benefits of the Survival Act on behalf of herself and all other persons entitled to recover under

the law.

75.   Plaintiff claims on behalf of Dwayne Flores all damages suffered, including, but not

limited to, significant conscious pain and suffering, catastrophic and fatal physical injuries and

mental anguish, great fright, embarrassment, humiliation, loss of ability to enjoy life's

pleasures, as well as the loss of future earning capacity from April 13, 2019 onwards.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants, jointly and severally, for wrongful death and survival damages, compensatory and punitive damages, plus interest, costs, attorney's fees and such other relief as the Court deems just and proper.

Date: April 13, 2021

DANIEL J. HETZNECKER
EARP COHN P.C.
ID #051021992
20 BRACE ROAD, SUITE 400
CHERRY HILL, NEW JERSEY 08034
Tel (856) 354-7700
dhetznecker@earpcohn.com
Attorney for Plaintiff